UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)

In re

AMERICAN TELNET, INC.,

        Debtor.

_____/

CHAPTER 7

CASE NO. 07-11430-BKC-JKO

KENNETH WELT, Chapter 7 Trustee
of Debtor AMERICAN TELNET, INC.,

        Plaintiff,

vs.

MICHAEL PARDES, an individual, TED
LIEBOWITZ, an individual, SARA
LIEBOWITZ, an individual, and
GAVIN KAHN, an individual,

        Defendants.

_____/

ADV. NO.  08-01824-JKO

## AMENDED ADVERSARY COMPLAINT

      Plaintiff Kenneth Welt ("Welt" or the "Trustee"), not individually but in his

capacity as the Chapter 7 trustee of the bankruptcy estate of American Telnet, Inc. ("American

Telnet" or the "Debtor"), files this Amended Adversary Complaint on behalf of the estate and the

creditors of the Debtor against the Defendants, Michael Pardes, an individual, Ted Liebowitz, an

individual, Sara Liebowitz, an individual, and Gavin Kahn, an individual (collectively, the

"Defendants").[1]   In support of the claims asserted herein, the Trustee alleges the following:

_____

     [1]  In compliance with Fed.R.Bankr.P. 7020 and Local Rule 7003-1(D) regarding the joinder of
multiple parties in a single filed complaint, each of the named defendants are former officers and/or
directors of the Debtor who are alleged to have, among other claims, breached their fiduciary duties, with

## THE PARTIES, JURISDICTION & VENUE

1.      On or about March 2, 2007 ("Petition Date"), an involuntary petition for relief under Chapter 7, Title 11 of the United States Code (the "Bankruptcy Code"), was filed against the Debtor by the Zodiac Group, Inc. ("Zodiac"), the American Psychic Association, Inc. ("American Psychic") and Allstate Communications, Inc. ("Allstate").

2.      The Debtor was at all relevant times a Florida corporation with its principal place of business in Plantation, Florida.

3.      On April 4, 2007, an Order for Relief was entered and Kenneth Welt was subsequently appointed as the Chapter 7 trustee.

4.      Michael Pardes ("Pardes") is an individual who resides in the State of Florida.  At all relevant times, Pardes was an officer, director and 39% shareholder of American Telnet.

5.      Ted Liebowitz ("T. Liebowitz") is an individual who resides in the State of New York.  At all relevant times, T. Liebowitz was an officer, director and 53% shareholder of American Telnet.

6.      Sara Liebowitz ("S. Liebowitz") is an individual who resides in the State of New York.  S. Liebowitz served as a director of American Telnet from 1999 until the company's administrative dissolution in 2006.

7.      Gavin Kahn ("Kahn") is an individual who resides in Broward County, Florida. Kahn served as Vice President of Legal and Business Affairs of American Telnet from 1999 until the company's administrative dissolution in 2006.

---

the right to relief of the Trustee predicated jointly and severally, and in respect of or arising out the same series of transactions, occurrences or series of transactions or occurrences, along with common questions and issues of law and fact.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334, 2201 and 2202.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), and (O).

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## FACTS COMMON TO ALL COUNTS

10.     American Telnet was a Florida corporation that was formed in or about 1992 by Pardes, T. Liebowitz and S. Liebowitz.

11.     During its existence, American Telnet was one of the largest providers of "audiotext" services or audio entertainment services offered over the telephone.  "Audiotext" services include audio information or audio entertainment, access to simultaneous voice conversation services, and any service involving the provision of a product that are accessed over the telephone by dialing 900 numbers and the like.  Such services include pay-per-call services as that term is defined by 16 C.F.R. § 308.2.  The charge for such services are assessed on the basis of the completion of the call.  The persons and entities that package and produce such services are known as "Information Providers."

12.     During its existence, American Telnet also developed and purchased certain software and other intellectual property to enable it to provide call access, telephone bill processing, bill rendering, remittance, accounting, and collection services to Information Providers.  American Telnet contracted with hundreds of Information Providers, which offered or sold audiotext services, including entertainment services such as psychic hotlines and horoscopes.  Zodiac and American Psychic were two Information Providers that contracted with American Telnet for billing and collecting services.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

13.     Charges for audiotext services are paid by the consumer through a credit card or by a charge made directly to the consumer's home telephone bill or to a consumer's regular monthly telephone bill.

14.     The service contracts between American Telnet and the Information Providers provided that American Telnet would collect revenues from the 900 calls and remit the revenues less a fee to the Information Providers on a monthly basis.  The contracts also provided that American Telnet would hold back a portion of the revenues in a reserve account pending reconciliation of accounts with the telephone service providers of the 900 call access ("holdbacks"). These holdbacks were supposed to be held for some eighteen months.  There was, in practice, regular monthly reconciliation of the holdback amounts.  In reality, however, no "reserve accounts" with holdback revenue funds ever existed.  The "accounts" existed on paper only and th funds were commingled by Defendants with all of the other funds of American Telnet.

15.     Among other valuable assets and/or opportunities,  American Telnet owned various phone numbers and had contractual rights to provide audio text and audio entertainment services on behalf of phone numbers owned by other information providers (collectively, the "Phone Numbers").

16.     In the fall of 2003, American Telnet stopped remitting revenues to various Information Providers and refused to pay the providers their revenue holdbacks.  At the same time, American Telnet also began to fail to pay other creditors as its debts came due.

17.     Prior to the fall of 2003, American Telnet was a profitable business.  Beginning in approximately 1998, the defendants began to hide American Telnet's income and divert

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

corporate assets and opportunities, initially in order to defraud a minority shareholder and later to defraud creditors.  In 1998, William Rivell, Jr. ("Rivell"), who was an employee and a shareholder of approximately two percent (2%) of the stock of American Telnet, left the company to form a competing business.  In October of 2002, Rivell filed suit to, among other things, collect amounts due him as a shareholder of American Telnet and otherwise to force defendants to buy back his shares of American Telnet.

18.     The first phase of Defendants' scheme to defraud creditors and to defraud Rivell involved the following actions:

a.      Defendants formed new corporations and began to funnel business opportunities and revenues of American Telnet into the new corporations for the purpose of making it seem as though the revenues of American Telnet were meager, and thereby decreasing the ostensible "value" of American Telnet and the amounts they would have to pay to Rivell as dividends and the amount of any re-purchase of his shares of American Telnet.  The new corporations into which the business opportunities and revenues of American Telnet were funneled by Defendants were owned by the same shareholders who owned American Telnet and in the same percentages but without Rivell.

b.      Defendants freely transferred monies through inter-company transfers so as to place the revenues and income out of the reach of American Telnet's creditors and shareholders.

c.      Shareholder distributions, which would otherwise have been paid by American Telnet, were diverted to other companies the Defendants had formed including Carrier Network Services, Inc., Outsource Telco Billing, Inc., IP Teleservices, Inc., and, upon

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

information and belief, Interactive Call Solutions, Inc. and Ultimate Live Solutions, Inc.

19.     In the fall of 2003, Zodiac and American Psychic began to question American Telnet about the holdback reserve accounts, and the amounts due to Zodiac and American Psychic.  At that time, because the holdback reserve funds had been spent and the holdback reserve accounts did not exist, Defendants undertook a further step in their scheme to hinder or delay the company's creditors, including Zodiac and American Psychic, and to serve the self interests of Pardes and T. Liebowitz by diverting the remainder of American Telnet's corporate assets and opportunities to Pardes and T. Liebowitz.

20.     This second phase of the fraud on creditors was aided by attorneys at the Akerman Sennerfit law firm ("Akerman"), who represented American Telnet.  After consultation with Akerman, Defendants created back-dated loan documents between American Telnet, as borrower, and Pardes and T. Liebowitz, as secured lenders with security interests in all of the assets of American Telnet, allegedly documenting loans made by Pardes and Liebowitz to American Telnet.  A plan was concocted to immediately declare the loan obligations to be in default, thereby allowing Liebowitz and Pardes to siphon as much cash and other assets out of the company as possible and to usurp American Telnet's corporate opportunities, which would allow them to avoid the obligations of American Telnet to its creditors.  The plan was elegantly simple.  The first step would be to settle with Rivell and buy back his shares so that Rivell would be removed as a possible dissident shareholder who would actively seek to investigate and stop their scheme.  The second step would be to sue on the promissory notes and security agreements, have American Telnet represented by "friendly" lawyers at Akerman who would not raise any defenses to the suit, file a motion for summary judgment that would not be opposed by the

Carlson & Lewittes, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

friendly lawyers at Akerman who were representing American Telnet, obtain a judgment, execute on the judgment, have minimal advertising of a Sheriff's sale, and take ownership of all of the assets of American Telnet at the Sheriff's sale.

21.    In October of 2003, Liebowitz and Pardes reached an agreement with Rivell to re-purchase Rivell's stock in American Telnet.  Pursuant to that settlement, American Telnet paid Rivell over $300,000.  Based on Rivell's percentage ownership of the company, the re-purchase would value American Telnet at over $15 million as a business enterprise.

22.    Simultaneous with getting Rivell out of the way, Pardes and T. Liebowitz had American Telnet execute a series of promissory notes and security agreements in their favor.  On October 23, 2003, Defendant Kahn recorded UCC-1s in favor of Pardes and T. Liebowitz with the Secretary of State of Florida, as a lien on all of the assets of American Telnet.

23.    Defendant Pardes and T. Liebowitz filed an action on the notes and the security agreements against American Telnet on or about January 21, 2004.  The Complaint they filed alleged the company had failed to repay a series of "loans" they had each allegedly made to the company supposedly only months before.

24.    The Complaint further alleged that on or about August 8, 2003, American Telnet executed and delivered to T. Liebowitz a first Promissory Note in the sum of $425,000.00 and a Security Agreement securing payment of the Note.  The Complaint further alleged that on or about August 11, 2003, American Telnet executed and delivered to Pardes a second Promissory Note in the sum of $352,000.00 and a Security Agreement securing payment of the Note.

25.    Four additional loans, also secured by Security Agreements, were alleged to have been made to American Telnet as follows:

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

- October 14, 2003 loan from Pardes in the amount of $214,500.

- October 14, 2003 loan from T. Liebowitz in the amount of $291,500.

- October 22, 2003 loan from Pardes in the amount of $127,173.91

- October 22, 2003 loan from T. Liebowitz in the amount of $172,825.

26.    The Board of Directors of American Telnet never took any action to approve these alleged loans.

27.    Moreover, although the notes appear to be dated in August and October of 2003, these notes were created in late October of 2003 with the assistance of Defendant Kahn and lawyers at Akerman.

28.    The Defendants' scheme to loot the Debtor of its assets and to usurp American Telnet's corporate opportunities continued when the defendants engaged Akerman to represent American Telnet in the case that Pardes and Liebowitz filed on the notes and security agreements.  The Defendants directed Akerman not to assert any defenses to the Complaint filed by Pardes and T. Liebowitz.  The answer filed by Akerman admits almost every single allegation of the Complaint, denying none, and asserts not one single affirmative defense, despite the availability of many affirmative defenses.   By way of example, American Telnet could have challenged these purported loans on the grounds that they were insider loans that should have been re-characterized as capital contributions, the loans were back-dated, there was a lack of consideration, the moneys allegedly loaned were returned to Pardes and T. Liebowitz in the form of other payments purportedly owed to them or to entities they controlled, or on the grounds that the loans were not enforceable because, among other reasons, no documentary stamps appear to have been paid and, in any event, the "loans" were in actuality capital contributions.

8

29.     Despite the availability of these and other defenses, the Defendants allowed, if not facilitated, the obtaining of judgments in favor of Padres and T. Liebowitz and against American Telnet.  These judgments were entered without opposition from Akerman on March 2, 2004 pursuant to motions for summary judgment filed by Pardes and T. Liebowitz.  The Defendants took no action and instructed Akerman to take no action to oppose the motion for summary judgment filed by Padres and T. Liebowitz

30.     Upon information and belief, there were other officers and/or directors of American Telnet who were unaware of the acts and omissions of Pardes, T. Liebowitz, S. Liebowitz and Kahn, and had they known, would have taken action to stop Pardes and T. Liebowitz from looting the company and taking for themselves American Telnet's assets, business and corporate opportunities.

31.     Judgments were entered on Pardes' and T. Liebowitz' purported loans as follows:

- Judgment for T. Liebowitz in the amount of $1,032,825.00, together with prejudgment interest in the sum of $38,945.77, court costs in the sum of $250.00 and attorney's fees of $4,471.00 for a total of $1,076,491.70.

- Judgment for Pardes in the amount of $799,673.91, together with prejudgment interest in the sum of $30,314.84, court costs in the sum of $250.00 and attorney's fees of $4,471.00 for a total of $834,709.75.

32.     Following the entry of judgments, Pardes and T. Liebowitz continued to further damage American Telnet by seeking post-judgment execution remedies, including levying all of the assets of the company including, *inter alia*, cash, equipment, revenue generating phone numbers, and contract rights, without engaging in commercially reasonable advertising of the proposed sale of assets by the Miami-Dade County Sheriff.  In addition, Defendants purposefully neglected to advise any of American Telnet's creditors of the proposed Sheriff's sale because

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

they wanted to be the successful bidder for all of the assets of the Debtor.  In addition,

Defendants purposely avoided providing an accurate description of the assets so that no one else

would bid for American Telnet's assets.

33.    Pardes and T. Liebowitz were the only ones who received any assets or anything

of value from American Telnet.

34.    Pardes and T. Liebowitz had every intention from the initiation of their suit

against American Telnet to take the assets and convert them to themselves or to entities that they

controlled.  In fact, in a letter dated February 9, 2004, which was executed by Pardes and T.

Liebowitz, Pardes and T. Liebowitz admit that it was their intention to take over all the assets of

American Telnet, tangible and intangible, and to "conduct a business similar to the business that

has been conducted by ATN [American Telnet] in the past."

35.    The assets transferred by American Telnet to Pardes and T. Liebowitz pursuant to

the Sheriff's sale included telephone numbers that continue to generate millions of dollars in net

revenues in what T. Leibowitz has aptly identified as "annuity dollars."

36.    On or about March 22, 2004, Zodiac and American Psychic filed suit against

American Telnet to recover sums due and owing to them under their contracts as well as to

recover the funds in the holdbacks.  Zodiac and American Psychic filed an amended complaint

on or about April 6, 2004, adding a claim for injunctive relief to prevent further disposition or

transfer of any holdbacks that may still have been in American Telnet's possession.  Zodiac and

American Psychic were too late, however, as Pardes and T. Liebowitz had already beaten them to

the punch and obtained the friendly judgment on which they would collect and take whatever was

left from American Telnet for themselves.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

37.     On or about September 7, 2004, judgments were entered against American Telnet,

awarding $2,040,000.00 to Zodiac and $479,000.00 to American Psychic.

38.     Allstate likewise filed suit against American Telnet as a result of American

Telnet's breach of its contract, which also was canceled without notice or explanation on

December 12, 2003.  Allstate alleged in its Complaint to have suffered damages of at least

$415,736.16 as a result of American Telnet's breach.  On or about November 5, 2004, Allstate

obtained a judgment against American Telnet in the amount of $547,147.71, plus interest, which

continues to accrue at the rate of 2.27% per annum from the date of judgment.

39.     As a result of the foregoing acts and omissions, millions of dollars remain unpaid

and outstanding to the non-insider creditors of American Telnet, including but not limited to

American Psychic, Zodiac, and Allstate.

40.     The obligations incurred by American Telnet and the transfers made to Pardes and

T. Liebowitz were made by American Telnet with actual intent to hinder, defraud, or delay

creditors of American Telnet.

41.     In addition to or alternatively, the obligations incurred by American Telnet and the

transfers made to Pardes and T. Liebowitz were made by American Telnet without receiving a

reasonably equivalent value in exchange for the transfer or the obligation and American Telnet

either was engaged in a business for which the remaining assets of the debtor were unreasonably

small in relation to the business or American Telnet intended to incur, or believed or reasonably

should have believed that it would incur debts beyond its ability to pay as they became due.

42.     In addition to or alternatively, the obligations incurred by American Telnet and the

transfers made to Pardes and T. Liebowitz were made by American Telnet without receiving a

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

reasonably equivalent value in exchange for the transfer or the obligation and American Telnet was insolvent at that time or became insolvent as a result of the transfer or obligation.

## COUNT I

### AVOIDANCE OF FRAUDULENT
### TRANSFERS AND OBLIGATIONS AGAINST T. LIEBOWITZ

43.     The Trustee realleges paragraphs 1 through 42 as if fully set forth herein.

44.     This is an action against T. Liebowitz to avoid and recover the transfers made and obligations incurred by the Debtor as fraudulent transfers in accordance with Section 544 of the Bankruptcy Code and Sections 726.105(1)(a), 726.105(1)(b), 726.106(1) and/or 56.29 of the Florida Statutes and/or other applicable law regarding the avoidance of fraudulent transfers.

45.     The foregoing transfers made and the obligations incurred in favor of T. Liebowitz may be avoided by the Trustee because each transfer and obligation was one or more of the following:

        a.      A transfer made by the debtor where the debtor made the transfer with actual intent to hinder, delay, or defraud a creditor of the debtor under section 726.105(1)(a), Florida Statutes;

        b.      A transfer made by the debtor where the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business under section 726.105(1)(b)(1), Florida Statutes;

        c.      A transfer made by the debtor where the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

its ability to pay as they became due under section 726.105(1)(b)(2), Florida Statutes;

  d. An obligation incurred by the debtor where the debtor incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor under section 726.105(1)(a), Florida Statutes;

  e. An obligation incurred by the debtor where the debtor incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer and the debtor was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business under section 726.105(1)(b)(1), Florida Statutes;

  f. An obligation incurred by the debtor where the debtor incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond its ability to pay as they became due under section 726.105(1)(b)(2), Florida Statutes;

  g. A transfer made where the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer under section 726.106(1), Florida Statutes; or

  h. An obligation incurred by the debtor where the obligation was incurred without receiving a reasonably equivalent value in exchange for the obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the obligation under section 726.106(1), Florida Statutes.

  46. The assets that are the subject of the transfers and obligations to T. Liebowitz

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

constituted transfers of an interest in property of the Debtor within four (4) years prior to the Petition Date or such additional periods of time provided for in 726.110(1), Florida Statutes.

47.     Pursuant to 11 U.S.C. §§ 544 and 550 and Chapter 726 and Section 56.29 of the Florida Statutes, the Trustee is entitled to recover from T. Liebowitz the value of the property transferred.  The value of the property exceeded $5 million.

WHEREFORE, the Trustee demands judgment against T. Liebowitz as follows: (i) determining that the transfers and obligations were fraudulent and avoidable under 11 U.S.C. §§ 544 and 550 and Chapter 726 and Section 56.29 of the Florida Statutes; (ii) entering judgment against T. Liebowitz for the value of the transfers plus interest and costs of suit; (iii) entering judgment against T. Liebowitz for the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telnet by non-insider creditors; and (v) for such other relief this Court deems appropriate.

## COUNT II

### AVOIDANCE OF FRAUDULENT
### TRANSFERS AND OBLIGATIONS AGAINST PARDES

48.     The Trustee realleges paragraphs 1 through 42 as if fully set forth herein.

49.     This is an action against Pardes to avoid and recover the transfers made and obligations incurred by the Debtor as fraudulent transfers in accordance with Section 544 of the Bankruptcy Code and Sections 726.105(1)(a), 726.105(1)(b), 726.106(1) and/or 56.29 of the Florida Statutes and/or other applicable law regarding the avoidance of fraudulent transfers.

50.     The foregoing transfers made and the obligations incurred in favor of Pardes may be avoided by the Trustee because each transfer and obligation was one or more of the following:

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

a.      A transfer made by the debtor where the debtor made the transfer with actual intent to hinder, delay, or defraud a creditor of the debtor under section 726.105(1)(a), Florida Statutes;

b.      A transfer made by the debtor where the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business under section 726.105(1)(b)(1), Florida Statutes;

c.      A transfer made by the debtor where the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond its ability to pay as they became due under section 726.105(1)(b)(2), Florida Statutes;

d.      An obligation incurred by the debtor where the debtor incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor under section 726.105(1)(a), Florida Statutes;

e.      An obligation incurred by the debtor where the debtor incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer and the debtor was engaged in a business for which the remaining assets of the debtor were unreasonably small in relation to the business under section 726.105(1)(b)(1), Florida Statutes;

f.      An obligation incurred by the debtor where the debtor incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur debts beyond its ability to pay as they became due under section 726.105(1)(b)(2), Florida

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

Statutes;

g.      A transfer made where the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer under section 726.106(1), Florida Statutes; or

h.      An obligation incurred by the debtor where the obligation was incurred without receiving a reasonably equivalent value in exchange for the obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the obligation under section 726.106(1), Florida Statutes.

51.     The assets that are the subject of the transfers and obligations to Pardes constituted transfers of an interest in property of the Debtor within four (4) years prior to the Petition Date or such additional periods of time provided for in 726.110(1), Florida Statutes.

52.     Pursuant to 11 U.S.C. §§ 544 and 550 and Chapter 726 and Section 56.29 of the Florida Statutes, the Trustee is entitled to recover from Pardes the value of the property transferred.  The value of the property exceeded $5 million.

WHEREFORE, the Trustee demands judgment against Pardes as follows: (i) determining that the transfers and obligations were fraudulent and avoidable under 11 U.S.C. §§ 544 and 550 and Chapter 726 and Section 56.29 of the Florida Statutes; (ii) entering judgment against T. Liebowitz for the value of the transfers plus interest and costs of suit; (iii) entering judgment against T. Liebowitz for the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telnet by non-insider creditors; and (v) for such other relief this Court deems

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

appropriate.

## COUNT III

### AVOIDANCE OF FRAUDULENT TRANSFERS TO CERTAIN OFFICERS AND DIRECTORS OF AMERICAN TELNET AGAINST PARDES, T. LIEBOWITZ, S. LIEBOWITZ, AND KAHN

53.    The Trustee realleges paragraphs 1 through 42 as if fully set forth herein.

54.    Pursuant to 11 U.S.C. §§ 544 and 548 and Chapter 726 and Section 56.29 of the Florida Statutes, the Trustee may avoid: (i) any transfer or obligation, and recover any transfer of property of a debtor, made without receiving reasonably equivalent value in exchange for the transfer when the debtor was insolvent at the time or became insolvent as a result of the transfer, or where the debtor knew or should have known that it would incur debts beyond its ability to pay as such debts, matured; and (ii) any transfers that were made to hinder or delay creditors.

55.    During and after their terms as officers and directors of American Telnet, the Defendants received compensation from American Telnet in the form of salaries, bonuses, stock options, severance payments and other benefits including but not limited to the severance payments made to Kahn in the amount of $120,000.00.  Upon information and belief, at the time such transfers were made, American Telnet was insolvent and/or knew or should have known that it was incurring or would be incurring debts beyond its ability to pay as such debts matured.

56.    Based upon the acts and omissions of the Defendants referred to above, American Telnet did not receive reasonably equivalent value for the purported services performed by the Defendants.

57.    Alternatively, the transfers were made with actual intent by American Telnet to hinder or delay creditors of American Telnet, and the Defendants did not receive such transfers in

good faith due to their knowledge of the impaired financial condition of American Telnet.

58.    The money was transferred to Padres, T. Liebowitz, S. Liebowitz and Kahn directly from American Telnet and through its affiliated entities that were used as a conduit to siphon money out of American Telnet.

59.    Pursuant to 11 U.S.C. §§ 544 and 550 and Chapter 726 and Section 56.29 of the Florida Statutes, the Trustee is entitled to recover from the Defendants the value of the property transferred.

WHEREFORE, the Trustee demand judgment against Defendants as follows: (i) determining that the transfers were fraudulent and avoidable under 11 U.S.C. §§ 544 and 550 and Chapter 726 and Section 56.29 of the Florida Statutes; (ii) entering judgment against Pardes, T. Liebowitz, S. Liebowitz and Kahn for the value of the transfers, plus interest and costs of suit; (iii) entering judgment against Padres, T. Liebowitz, S. Liebowitz and Kahn for the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amount of the judgments entered against American Telnet by non-insider creditors; (iv) entering judgment against Padres, T. Liebowitz, S. Liebowitz and Kahn avoiding the transfers; (v) disallowing any claim the Defendants may have against the American Telnet estate unless and until such time as the amounts asserted hereunder are paid as provided in 11 U.S.C. 502(d), subject to other objections thereto; and (vi) for such other relief this Court deems appropriate.

## COUNT IV

## <u>BREACH OF FIDUCIARY DUTY BY PARDES</u>

60.    The Trustee realleges paragraphs 1 through 42 above as if fully set forth herein.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

61.     At all material times, Pardes was an officer and/or director of American Telnet. As such, Pardes owed American Telnet and its shareholders a fiduciary duties to discharge his duties in good faith, with the care an ordinarily prudent officer or director in a like position would exercise and in a manner reasonably believed to be in American Telnet's best interests. When American Telnet became insolvent, Pardes then owed the same fiduciary obligations to American Telnet and its creditors.  The conduct of Pardes set forth herein constitutes a breach of duty of loyalty and/or care owed to American Telnet and its creditors.

62.     Pardes and T. Liebowitz caused corporate opportunities belonging to American Telnet to be diverted to other corporations owned by Pardes and T. Liebowitz and beginning in 1999 and continuing through to the present the income from those opportunities has flowed to Pardes and Liebowitz.  The purpose for diverting these corporate opportunities was to hinder, delay and defraud creditors.

63.     Pardes and Liebowitz also authorized American Telnet to enter into transactions in order to advance their own interests to the detriment of American Telnet and/or its creditors in the following respects, among others: (1) causing American Telnet to enter into loan obligations that each knew or should have known was beyond the company's ability to pay and/or were not in the best interests of American Telnet; (2) filing suit against American Telnet to obtain a friendly judgment in his favor and hinder or delay the creditors of the company; (3) failing to describe or disclose the assets of American Telnet with sufficient particularity in connection with the sale of assets so that no bidder would seek to purchase the assets; (4) executing on the judgment knowing of, among other badges of fraud, the company's insolvency and dire financial condition; and (5) entering into contracts with Network Telephone Services, Inc. ("NTS") to

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

divert assets, income and revenue from American Telnet and to direct them to Pardes and T. Liebowitz or to entities they control.

64.     During the pendency of the friendly lawsuit instituted by Pardes and T. Liebowitz against American Telnet, Pardes and T. Liebowitz also negotiated various marketing service bureau agreements with NTS.  The agreements were executed on March 29, 2004, approximately four weeks after Pardes and T. Liebowitz obtained their friendly judgment against American Telnet.  Pursuant to such agreements,  NTS was hired to provide service bureau and other related services to American Telnet and its related entities in connection with the (800), (900), local and international exchange audio text Phone Numbers and the phone numbers purportedly owned by American Telnet's related entities and their purported information provider customers.

65.     The average net revenue including return deposits generated by the American Telnet agreement alone (excluding the agreements entered into between American Telnet's related entities and NTS) exceeded the sum of $750,000 annually.  In addition, Pardes and T. Leibowitz sold and transferred other valuable assets of American Telnet to NTS for no less than $150,000.  Other additional property was converted and removed by Pardes and T. Liebowitz from American Telnet including, among other things, more than $343,000 in amounts garnished from American Telnet's bank accounts.   In total, Pardes and T. Liebowitz collected approximately $5,000,000, not including pre-judgment interest, over the past five and one-half years as a result from their conversion of American Telnet's assets.

66.     In addition, at the time that American Telnet entered into its agreement with NTS, Pardes and T. Liebowitz on behalf of their related entities executed separate agreements with NTS.  The phone numbers purportedly owned by such related entities and their purported

Carlson & Lewittes, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

information provider customers were in fact American Telnet's property or corporate

opportunities of American Telnet which Pardes and T. Liebowitz diverted to themselves.  Pardes

and Liebowitz undertook to expand those businesses to the exclusion of American Telnet

considering the American Telnet revenues simply as an "annuity"    The additional numbers

Pardes and T. Liebowitz had serviced through NTS provided such defendants with additional net

revenue exceeding the sum of $1,000,000 annually, or more than $5,000,000 to date.

67.    As a direct and proximate result of Pardes' breaches of his duties of care and

loyalty, which resulted in the conversion of assets and usurpation of corporate opportunities, the

enterprise value of American Telnet was substantially diminished and the creditors were

damaged thereby.

68.    Each of the above breaches adversely impacted and conferred no benefit on

American Telnet, while confirming a benefit upon insiders Pardes and T. Liebowitz.

69.    As a result of the foregoing actions and inactions, Pardes breached or failed to

perform his duties as a director and the breach of, or failure to perform, his duties as a director

constitutes:

  a.    Transactions from which Pardes derived improper personal benefits;

  b.    Conscious disregard for the best interests of the corporation or wilful

misconduct; or

  c.    Recklessness or an act or omission which was committed in bad faith or

with malicious purpose or in a manner exhibiting wanton and wilful disregard of human rights,

safety or property.

70.    As a direct and proximate result of Pardes' breach of fiduciary duty, the value of

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

American Telnet was substantially diminished, assets were misappropriated and diverted, and the creditors were damaged thereby.

WHEREFORE, the Trustee demands judgment against Pardes for compensatory damages and special damages including, but not limited to, the transfers to Pardes and T. Liebowitz and their corporations, the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telnet by non-insider creditors, out-of-pocket fees, costs and expenses attributable and incurred or paid by American Telnet and the Trustee, all attributable attorneys fees, costs and expenses paid or incurred by American Telnet pre-petition and for the value of all American Telnet's claims against insiders and/or third parties that were not properly or timely pursued by American Telnet, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate.  The Trustee reserves the right to seek punitive damages at the appropriate time.

## COUNT V

## **BREACH OF FIDUCIARY DUTY BY T. LIEBOWITZ**

71.     The Trustee realleges paragraphs 1 through 42 above as if fully set forth herein.

72.     At all material times, T. Liebowitz, was an officer and/or director of American Telnet.  As such, T. Liebowitz owed American Telnet and its shareholders a fiduciary duties to discharge his duties in good faith, with the care an ordinarily prudent officer or director in a like position would exercise and in a manner reasonably believed to be in American Telnet's best interests.  When American Telnet became insolvent, T. Liebowitz then owed the same fiduciary obligations to American Telnet and its creditors.  The conduct of T. Liebowitz set forth herein

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

constitutes a breach of duty of loyalty and/or care owed to American Telnet and its creditors.

73.    Pardes and T. Liebowitz caused corporate opportunities belonging to American Telnet to be diverted to other corporations owned by Pardes and T. Liebowitz and beginning in 1999 and continuing through to the present the income from those opportunities has flowed to Pardes and Liebowitz.  The purpose for diverting these corporate opportunities was to hinder, delay and defraud creditors.

74.    Pardes and Liebowitz also authorized American Telnet to enter into transactions in order to advance their own interests to the detriment of American Telnet and/or its creditors in the following respects, among others: (1) causing American Telnet to enter into loan obligations that each knew or should have known was beyond the company's ability to pay and/or were not in the best interests of American Telnet; (2) filing suit against American Telnet to obtain a friendly judgment in his favor and hinder or delay the creditors of the company; (3) failing to describe or disclose the assets of American Telnet with sufficient particularity in connection with the sale of assets so that no bidder would seek to purchase the assets; (4) executing on the judgment knowing of, among other badges of fraud, the company's insolvency and dire financial condition; and (5) entering into contracts with Network Telephone Services, Inc. ("NTS") to divert assets, income and revenue from American Telnet and to direct them to Pardes and T. Liebowitz or to entities they control.

75.    During the pendency of the friendly lawsuit instituted by Pardes and T. Liebowitz against American Telnet, Pardes and T. Liebowitz also negotiated various marketing service bureau agreements with NTS.  The agreements were executed on March 29, 2004, approximately four weeks after Pardes and T. Liebowitz obtained their friendly judgment against American

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

Telnet. Pursuant to such agreements, NTS was hired to provide service bureau and other related services to American Telnet and its related entities in connection with the (800), (900), local and international exchange audio text Phone Numbers and the phone numbers purportedly owned by American Telnet's related entities and their purported information provider customers.

76. The average net revenue including return deposits generated by the American Telnet agreement alone (excluding the agreements entered into between American Telnet's related entities and NTS) exceeded the sum of $750,000 annually. In addition, Pardes and T. Leibowitz sold and transferred other valuable assets of American Telnet to NTS for no less than $150,000. Other additional property was converted and removed by Pardes and T. Liebowitz from American Telnet including, among other things, more than $343,000 in amounts garnished from American Telnet's bank accounts. In total, Pardes and T. Liebowitz collected approximately $5,000,000, not including pre-judgment interest, over the past five and one-half years as a result from their conversion of American Telnet's assets.

77. In addition, at the time that American Telnet entered into its agreement with NTS, Pardes and T. Liebowitz on behalf of their related entities executed separate agreements with NTS. The phone numbers purportedly owned by such related entities and their purported information provider customers were in fact American Telnet's property or corporate opportunities of American Telnet which Pardes and T. Liebowitz diverted to themselves. Pardes and Liebowitz undertook to expand those businesses to the exclusion of American Telnet considering the American Telnet revenues simply as an "annuity" The additional numbers Pardes and T. Liebowitz had serviced through NTS provided such defendants with additional net revenue exceeding the sum of $1,000,000 annually, or more than $5,000,000 to date.

Carlson & Lewittes, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

78.     As a direct and proximate result of T. Liebowitz' breaches of his duties of care and loyalty, which resulted in the conversion of assets and usurpation of corporate opportunities, the enterprise value of American Telnet was substantially diminished and the creditors were damaged thereby.

79.     Each of the above breaches adversely impacted and conferred no benefit on American Telnet, while confirming a benefit upon insiders Pardes and T. Liebowitz.

80.     As a result of the foregoing actions and inactions, T. Liebowitz breached or failed to perform his duties as a director and the breach of, or failure to perform, his duties as a director constitutes:

     a.     Transactions from which T. Liebowitz derived improper personal benefits;

     b.     Conscious disregard for the best interests of the corporation or wilful misconduct; or

     c.     Recklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and wilful disregard of human rights, safety or property.

81.     As a direct and proximate result of T. Liebowitz' breach of fiduciary duty, the value of American Telnet was substantially diminished, assets were misappropriated and diverted, and the creditors were damaged thereby.

WHEREFORE, the Trustee demands judgment against T. Liebowitz for compensatory damages and special damages including, but not limited to, the transfers to Pardes and T. Liebowitz and their corporations, the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

entered against American Telnet by non-insider creditors, out-of-pocket fees, costs and expenses

attributable and incurred or paid by American Telnet and the Trustee, all attributable attorneys

fees, costs and expenses paid or incurred by American Telnet pre-petition and for the value of all

American Telnet's claims against insiders and/or third parties that were not properly or timely

pursued by American Telnet, plus pre-judgment interest, court costs and for such other relief this

Court deems appropriate.  The Trustee reserves the right to seek punitive damages at the

appropriate time.

**COUNT VI**

**BREACH OF FIDUCIARY DUTY BY KAHN**

82.    The Trustee realleges paragraphs 1 through 42 and 73 through 77  above as if fully

set forth herein.

83.    At all material times, Kahn was an officer of American Telnet.  As such, Kahn

owed American Telnet, its shareholders and its creditors a fiduciary duty to discharge his duties

in good faith, with the care of an ordinary prudent officer or director in a like position would

exercise and in a manner reasonably believed to be in American Telnet's best interest.  When

American Telnet became insolvent, he then owed his fiduciary obligation to American Telnet and

its creditors.  The conduct of Kahn set forth herein constitutes a breach of duty of loyalty and/or

care owed to American Telnet and its creditors.

84.    Kahn exhibited a negligent, grossly negligent and/or reckless disregard for the

best interests of American Telnet and its creditors in relation to the facts and circumstances as set

forth above.  Kahn should have known of the risk of damage that ultimately befell American

Telnet and its creditors.

Carlson & Lewittes, P.A.

One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

85.    Kahn breached his fiduciary duties owed to American Telnet and its creditors by permitting Pardes and T. Liebowitz to engage in the acts and omissions referred to in this Amended Complaint and failing to defend the lawsuit filed against American Telnet by Pardes and T. Liebowitz and/or by failing to take appropriate action to stop Pardes and T. Liebowitz.

86.    Kahn further breached his duties by, among other things, failing to adequately apprise himself of the bona fides of the transactions at issue and failing to require the implementation of adequate safeguards or controls which could have created an environment that would have likely prevented such breaches from occurring.  Alternatively, Kahn breached his fiduciary duties by actively participating in the wrongdoing alleged above in concert with Pardes and T. Liebowtiz.

87.    As a direct and proximate result of Kahn's breaches of fiduciary duty, the enterprise value of American Telnet was substantially diminished and the creditors were damaged thereby.

WHEREFORE, the Trustee demands judgment against Kahn for compensatory damages and special damages including, but not limited to, the Pardes and T. Liebowitz transfers, the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telnet by non-insider creditors, out-of-pocket fees, costs and expenses attributable attorneys fees, costs and expenses paid or incurred by American Telnet pre-petition and for the value of all American Telnet's claims against third parties that were not properly or timely pursued by American Telnet, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate.  The Trustee reserves the right to seek punitive damages at the appropriate time.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

## COUNT VII

## <u>BREACH OF FIDUCIARY DUTY BY S. LIEBOWITZ</u>

88.     The Trustee realleges paragraphs 1 through 42 and 73 through 77 above as if fully set forth herein.

89.     At all material times, S. Liebowitz was a director of American Telnet. As such, S. Liebowitz owed American Telnet, its shareholders and its creditors a fiduciary duty to discharge her duties in good faith, with the care of an ordinary prudent officer or director in a like position would exercise and in a manner reasonably believed to be in American Telnet's best interest. When American Telnet became insolvent, she then owed her fiduciary obligation to American Telnet and its creditors. The conduct of S. Liebowitz set forth herein constitutes a breach of duty of loyalty and/or care owed to American Telnet and its creditors.

90.     S. Liebowitz breached her fiduciary duties owed to American Telnet and its creditors by permitting Pardes and T. Liebowitz to engage in the acts and omissions referred to in this Amended Complaint and failing to defend the lawsuit filed against American Telnet by Pardes and T. Liebowitz and/or by failing to take appropriate action to stop Pardes and T. Liebowitz.

91.     S. Liebowitz further breached her respective duties by, among other things, failing to adequately apprise herself of the bona fides of the transactions at issue and failing to require the implementation of adequate safeguards or controls which could have created an environment that would have likely prevented such breaches from occurring. Alternatively, S. Liebowitz breached her fiduciary duties by actively participating in the wrongdoing alleged above in concert with Pardes and T. Liebowitz.

Carlson & Lewittes, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

92.     As a result of the foregoing actions and inactions, S. Liebowitz breached or failed to perform her duties as a director and the breach of, or failure to perform, her duties as a director constitutes:

a.     Transactions from which S. Liebowitz derived improper personal benefits;

b.     Conscious disregard for the best interests of the corporation or wilful misconduct; or

c.     Recklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and wilful disregard of human rights, safety or property.

93.     As a direct and proximate result of S. Liebowitz' breaches of fiduciary duty, the value of American Telnet was substantially diminished, assets were misappropriated and diverted, and the creditors were damaged thereby.

WHEREFORE, the Trustee demands judgment against S. Liebowitz for compensatory damages and special damages including, but not limited to, the Pardes and T. Liebowitz transfers, the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telnet by non-insider creditors, out-of-pocket fees, costs and expenses attributable attorneys fees, costs and expenses paid or incurred by American Telnet pre-petition and for the value of all American Telnet's claims against third parties that were not properly or timely pursued by American Telnet, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate.  The Trustee reserves the right to seek punitive damages at the appropriate time.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

## COUNT VIII

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
## BY S. LIEBOWITZ AND KAHN

94.     The Trustee realleges paragraphs 1 through 42  and 73 through 77 as if fully set forth herein.

95.     At all material times hereto S. Liebowitz and Kahn were officers and/or directors of American Telnet.

96.     S. Liebowitz and Kahn had knowledge of the facts and circumstances alleged in paragraphs 1 through 42 and 73 through 77 above, and, in particular, the breaches of fiduciary duties of Pardes and T. Liebowtiz.  S. Liebowitz and Kahn rendered substantial assistance to Pardes and T. Liebowitz in their wrongdoing and thereby aided and abetted Pardes and T. Liebowitz' breaches of fiduciary duty to American Telnet.

97.     Based upon the foregoing, S. Liebowitz and Kahn are liable for all damages proximately caused by the acts and omissions of one another and of the remaining Defendants.

98.     The breaches of fiduciary duty by Pardes and T. Liebowitz, as aided and abetted by S. Liebowitz and Kahn, proximately caused damage to American Telnet.

99.     The conduct of S. Liebowitz and Kahn was not privileged or justified.

WHEREFORE, the Trustee demands judgment against S. Liebowitz and Kahn, jointly and severally, for compensatory damages and special damages including, but not limited to, the Pardes and T. Liebowitz transfers, the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telnet by non-insider creditors, out-of-pocket fees, costs and expenses attributable to and incurred or paid by American Telnet and the Trustee, all attributable attorneys

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

fees, costs and expenses paid or incurred by American Telnet pre-petition and for the value of all

American Telnet's claims against insiders that were not properly pursued by American Telnet,

plus pre-judgment interest, court costs and for such other relief this Court deems appropriate.

The Trustee reserves the right to seek punitive damages at the appropriate time.

## COUNT IX

### DECLARATORY RELIEF THAT THE JUDGMENTS OBTAINED BY PARDES AND T. LIEBOWITZ ARE INVALID AND UNENFORCEABLE

100.     The Trustee realleges paragraphs 1 through 42 as if fully set forth herein.

101.     This is a claim for declaratory relief under the provisions of 28 U.S.C. 2201 and

2202, 11 U.S.C. 105 and 11 U.S.C. 544 and Sections 726.105(1)(a), 726.105(1(b), 726.106(1)

and/or 56.29 of the Florida Statutes and/or other applicable law regarding the avoidance of

fraudulent transfers.

102.     An actual controversy has arisen and now exists between the Trustee and

Defendants Pardes and T. Liebowitz related to the validity and enforceability of the Judgments

obtained by Defendants Pardes and T. Liebowitz which are more fully identified in paragraph 31

above.

103.     A court may look behind the nature of the judgments to determine the essential

nature of the liability and to disregard a  judgment if it were obtained collusively to the detriment

of the estate and its creditors.

WHEREFORE, the Trustee demands that a judgment be entered determining whether the

Judgments obtained  by Pardes and T. Liebowitz against the estate are valid and enforceable and,

in the event that the Judgments are not enforceable that Pardes and T. Liebowitz be held liable

for the value of the all the transfers made to them; for the increased insolvency of American

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telent by non-insider creditors; out-of-pocket fees, costs and expenses attributable to and incurred or paid by American Telnet and the Trustee, all attributable attorneys fees, costs and expenses paid or incurred by American Telnet pre-petition and for the value of all American Telnet's claims against insiders that were not properly pursued by American Telnet, plus pre-judgment interest, court costs and for such other relief this Court deems appropriate.

## COUNT X

### RECLASSIFICATION OF DEBT AS EQUITY
### AGAINST PARDES AND T. LIEBOWITZ

104.    The Trustee realleges paragraphs 1 through 42 as if fully set forth herein.

105.    To the extent Pardes and T. Liebowitz provided any funds to American Telnet, the transactions were not completed as loans.

106.    The loan documents do not accurately characterize the nature of any alleged contributions by Pardes and T. Liebowitz to American Telnet as they were created after the fact and not contemporaneously with the provision of any funds to American Telnet.  Moreover, there was never any Board action to approve the loans and no documentary stamps appear to have been paid.

107.    Pardes and T. Liebowitz's attempts to re-characterize their purported contributions to appear to be loans and, thus, to as to increase their place in line and hinder or delay American Telnet's creditors was clearly revealed by the October 14, 2003 correspondence enclosing back-dated loan documents and the October 16, 2003 email suggesting edits to the back-dated loan documents.

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

WHEREFORE, the Trustee demands judgment against Pardes and T. Liebowitz as follows:  (i) finding that Pardes and T. Liebowitz's "loans" were in fact capital contributions; (ii) determining that the transfers were fraudulent and avoidable under 11 U.S.C. §§ 544 and 550 and Chapter 726 of the Florida Statutes; (iii) entering judgment against the Pardes and T. Liebowitz for the value of the transfers, plus interest and costs of suit; (iv) entering judgment against Pardes and T. Liebowitz for the increased insolvency of American Telnet, including the amount of all claims filed or to be filed against the estate and the amounts of the judgments entered against American Telent by non-insider creditors; (v) entering judgment against the Pardes and T. Liebowitz avoiding the transfers; and (vi) for such other relief this Court deems appropriate.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully submitted,

*Special counsel for the Trustee*:

CARLSON & LEWITTES, P.A.


By:_____ s/ Ronald J. Lewittes_____
    Curtis Carlson, FBN 236640
    Ronald J. Lewittes, FBN 0052840
    Suntrust International Center
    Suite 1200
    One S.E. Third Avenue
    Miami, Florida 33131
    Telephone:  305.372.9700
    Facsimile:  305.372.8265
    Email: carlson@carlson-law.net

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 13, 2009, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record listed below, in the manner specified, either via transmitting of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Chad Pugatch, Esq.
Rice Pugatch Robinson & Schiller, P.A.
101 N.E. 3rd Avenue, Suite 1800
Fort Lauderdale, Florida 33301
(954) 462-8000
(954) 462-4300 Fax
Notices of Electronic Filing generated by CM/ECF

By:  _____s/ Ronald J. Lewittes_____

CARLSON & LEWITTES, P.A.
One Southeast Third Avenue • Suite 1200 • Miami, Florida 33131 • 305.372.9700